503 S.E.2d 258

**POCAHONTAS MINING COMPANY LIMITED PARTNERSHIP, Plaintiff Below, Appellant,**

v.

**OXY USA, Inc., Cardinal Resources, Inc., R & B Petroleum, Inc., and James J. Boyle, Defendants Below, Appellees.**

No. 24200.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 1998.

Decided March 31, 1998.

Dissenting Opinion of Justice McCuskey April 2, 1998.

Richard Neely, Neely & Hunter, Charleston, for Appellant.

Mark A. Swartz, Kay, Casto, Chaney, Love & Wise, Charleston, for Appellee, OXY USA, Inc.

J. Thomas Lane, Bowles, Rice, McDavid, Graff & Love, Charleston, for Appellees, Cardinal Resources, Inc., R & B Petroleum, Inc., and James J. Boyle.

PER CURIAM.[1]

This is an appeal by Pocahontas Mining Company from an order of the Circuit Court of McDowell County dismissing a fraud claim which Pocahontas Mining Company asserted against Cardinal Resources, Inc., formerly known as R & B Petroleum, Inc. The circuit court found that Pocahontas Mining Company did not plead fraud with the particularity required by Rule 9(b) of the West Virginia Rules of Civil Procedure.

On appeal, Pocahontas Mining Company claims that it did assert its fraud claim with the particularity required by Rule 9(b) of the West Virginia Rules of Civil Procedure and that the circuit court erred in dismissing its claim. After reviewing the issue raised and the record in this case, we conclude that the circuit court did err in dismissing the fraud claim. The judgment of the circuit court is, therefore, reversed, and this case is remanded for further development.

On May 21, 1993, the appellant, Pocahontas Mining Company, filed a complaint in the

---

**1.** We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

Circuit Court of McDowell County in which it alleged that the appellee, Cardinal Resources, Inc., formerly known as R & B Petroleum, Inc., acting pursuant to the provisions of a proper oil and gas lease, but without notice to Pocahontas Mining, drilled a well on a parcel of property owned by Pocahontas Mining in McDowell County. The complaint also alleged that Cardinal Resources produced natural gas from the well without paying appropriate royalties. Pocahontas Mining claimed that Cardinal Resources had made misrepresentations about the location of the well in applying for a permit to drill it, and Pocahontas Mining suggested that the actions of Cardinal Resources constituted fraud.

In an amended complaint filed on June 3, 1993, Pocahontas Mining changed the language of the original complaint as it related to fraudulent activity. The amended complaint stated that the documentation provid-

ed by R & B Petroleum, Inc., relating to the location of the well in question, was false.[2] Pocahontas Mining in a second amended complaint filed on February 16, 1996, stated that "[t]he actions of defendants as aforesaid constitute fraud and a breach and forfeiture of the aforesaid lease agreement...."

Pocahontas Mining Company later filed a "Bill of Particulars" in which it provided details of the alleged false representations.[3]

After the filing of the second amended complaint, Cardinal Resources moved to dismiss the fraud claim on the ground that fraud was not pled with the particularity required by Rule 9(b) of the West Virginia Rules of Civil Procedure. This question was renewed after the filing of the "Bill of Particulars," and the circuit court, after hearing the positions of the parties, concluded that fraud was not pled with sufficient particularity.[4] The court stated:

---

2. The amended complaint stated:

    In applying for the permit for Well GP–4, defendant R & B Petroleum, Inc., provided *false* documentation and surveys to the Office of Oil and Gas indicating that the well was located on property owned by Georgia Pacific Corporation when, in fact, the property and the oil and gas underlying the property was owned by plaintiff and remains owned by plaintiff since that time. (Emphasis added.)

3. The "Bill of Particulars" stated:

    1. Defendant Cardinal Resources, Inc. ("CRI"), then R & B Petroleum, Inc., as agent and nominee of R & B Petroleum Partnership–1975 ("Partnership–1975") and R & B Petroleum Partnership–1979B ("Partnership–1979B"), and with the knowledge of the predecessor of defendant OXY USA, Inc. ("OUI") and defendant James J. Boyle ("Boyle"), President of R & B Petroleum, Inc. And General Partner of Partnership–1975 and Partnership–1979B, drilled the GP–4 well on the plaintiff's land in 1980.

    2. Defendants CRI, OUI and Boyle knew, at the time of the drilling of the GP–4 well or within fourteen (14) months thereafter, that the well was located on the plaintiff's land.

    3. Defendants CRI, OUI and Boyle knew that the well application filed with the State of West Virginia did not name plaintiff as owner of the surface or oil and gas where the well was located and that plaintiff did not get notice of the drilling of the well. The well plat correctly locates the well on the location map filed with the application, but incorrectly identifies the property owner.

    4. Defendants CRI, OUI and Boyle, acting in a scheme of fraud and deceit, failed to disclose

to plaintiff and concealed and withheld notification to plaintiff that the well was located on plaintiff's land.

    5. Beginning in 1981 or 1982 and continuing until at least 1992, defendant CRI, then R & B Petroleum, Inc., sold the gas from the GP–4 well and collected the sales price and, with the knowledge of Boyle, paid working interest payments to Partnership–1975 and Partnership–1979B, and overriding royalty payments to OUI or its predecessor lessee. No landowner royalty was paid to plaintiff or any third party by the defendants.

    6. The actions of defendants as aforesaid constituted a scheme of fraud and deceit which violated plaintiff's rights, by lease or statute (or both), to be notified of the drilling of the well, to object to the location of the well, to be paid and obtain royalty payments over a period of approximately ten (10) years, and to otherwise protect its interest. Plaintiff did not learn of the existence of the GP–4 well on its land until June of 1991.

4. The question of whether a "Bill of Particulars" is a pleading, as defined by Rule 7(a) of the West Virginia Rules of Civil Procedure, which could be considered in determining whether the pleadings asserted fraud with the particularity required by Rule 9(b) of the West Virginia Rules of Civil Procedure, was not raised on appeal. However, because the circuit court permitted its filing and considered its allegations in connection with the particularity issue, and because this was not assigned as error, we also consider the allegations of the "Bill of Particulars" in reviewing the lower court's decision. This should in no way suggest that this Court recognizes a "Bill of Particulars" as a proper pleading in this context.

The Court finds that the plaintiff's fraud claim has not been stated with the degree of specificity or particularity required by the West Virginia Rules of Civil Procedure and the applicable case law in that regard.

The court, accordingly, granted the motion of Cardinal Resources and dismissed the claim.

As previously stated, in the present appeal Pocahontas Mining Company claims that the circuit court erred in dismissing the fraud claim.

■ In Syllabus Point 1 of *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995), this Court held that:

Where the issue on appeal from the circuit court is clearly a question of law or involving the interpretation of a statute, we apply a *de novo* standard of review.

As a general rule, the West Virginia Rules of Civil Procedure permit the assertion of claims by "short and plain statements." R.C.P., 8(a). Rule 9(b) of the Rules, however, specifically requires that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity...." The same requirement is included in Rule 9(b) of the Federal Rules of Civil Procedure, the rule on which West Virginia's Rule 9(b) is based. *See* 5 Wright and Miller, Federal Practice and Procedure: Civil 2d § 1297 (1990).

In *Hager v. Exxon Corporation,* 161 W.Va. 278, 241 S.E.2d 920 (1978), this Court examined the rationale behind the requirement of Rule 9(b) that fraud be stated with particularity. The Court concluded that fraud is of such gravity that the strict requirements of Rule 9(b) were included to afford a party charged with fraud an opportunity to prepare an adequate defense.

■ A careful examination of the complaints filed in the present case, as well as the "Bill of Particulars" filed by the appellant, shows that the appellant is alleging that the appellee, Cardinal Resources, Inc., or R & B Petroleum, Inc., its predecessor, made intentional misrepresentations of fact about the location of the well in issue. Specifically, the first amended complaint clearly states

that Cardinal Resources, Inc., or R & B Petroleum, Inc., provided "*false* information and surveys that the well was located on property owned by Georgia Pacific Corporation...." The complaints further allege that Cardinal Resources, Inc., or R & B Petroleum, Inc., willfully refrained from paying royalties due to Pocahontas Mining Company. It is also clear that Pocahontas Mining is claiming that, by wilfully concealing the true location of the well, Cardinal Resources or R & B Petroleum attempted to conceal the fact that a well had been drilled on the Pocahontas Mining property and that the misrepresentation was calculated to dissuade Pocahontas Mining from objecting to the location of the well and seeking the royalties due.

Although this Court believes that fraud was somewhat inartfully pled, we conclude that fraud was asserted with sufficient particularity to afford Cardinal Resources, Inc., reasonable notice of the nature of the claim. The Court also believes that the evidence was sufficiently developed to raise such genuine issues of material fact as to require submission of the case to a jury.

Since the pleadings were sufficient to afford Cardinal Resources, Inc., an opportunity to prepare an adequate defense, the purpose underlying the Rule 9(b) requirement of pleading fraud with particularity, as discussed in *Hager v. Exxon Corporation, supra,* was realized, and the trial court erred in granting the motion of Cardinal Resources, Inc., to dismiss the fraud claim on the ground that it was not adequately pled.

The judgment of the Circuit Court of McDowell County is, therefore, reversed, and this case is remanded for further development.

Reversed and Remanded.

WORKMAN, Justice, concurring:

I write separately because the dissent gives such a mistaken view of what the law is with regard to the concept of detrimental reliance in the context of fraud; and because I cannot leave unchallenged a reasoning that would reward fraudulent actors for their skill in deception. The dissent sets forth the proposition that under the law of fraud, any-

time one is intentionally lied to and stolen from,[1] there can be no fraud if the one defrauded doesn't find out about it and thus takes no affirmative action in reliance thereon.

First, a general examination of the law on fraud.

## I. West Virginia Precedent

Rule 9(b) of the West Virginia Rules of Civil Procedure provides, in pertinent part, that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The degree of particularity has been delineated, somewhat obscurely, by our West Virginia case law. In *Hager v. Exxon Corporation*, 161 W.Va. 278, 241 S.E.2d 920 (1978), this Court addressed Rule 9(b) and explained:

> Not only must fraud or mistake be pleaded, the circumstances creating the fraud or mistake must be set out in the pleadings with particularity. The charge of fraud is of such gravity that the strict requirements of Rule 9(b), R.C.P., have been included in the procedural rules as an exception to the principles of brevity and simplicity in pleading called for in Rule 8(e)(1). The rationale for these requirements is to permit the party charged with fraud the opportunity to prepare a defense.

161 W.Va. at 283, 241 S.E.2d at 923.

In *Hager*, "the plaintiffs not only failed to plead the circumstances constituting fraud or mistake, they did not even allege fraud or mistake in their complaint." *Id.* In syllabus point one of *Hager*, we specified that failure to allege fraud with particularity as required by Rule 9(b) precludes the offer of proof thereof during the trial. *Id.* at 278, 241 S.E.2d at 921.

Resolving a dispute regarding the sufficiency of the averment of fraud in *Chamberlaine & Flowers, Inc. v. McBee*, 177 W.Va. 755, 356 S.E.2d 626 (1987), we grounded our analysis upon the stated purpose of Rule 9(b), as expressed in *Hager*: "to permit the party charged with fraud the opportunity to

prepare a defense." *Chamberlaine*, 177 W.Va. at 758, 356 S.E.2d at 629. In *Chamberlaine*, the averment declared that the appellees "knew or should have known that the roof of said structure was in a defective condition but failed to inform Counterclaimant as to said condition." *Id.* The Court determined in *Chamberlaine* that "[t]his averment clearly informed both C & F and Frances Stout of the appellants' allegations against them" and consequently concluded that the averment of fraud conformed to the requirements of Rule 9(b). *Id.*

In *Croston v. Emax Oil Co.*, 195 W.Va. 86, 464 S.E.2d 728 (1995), the appellants asserted an allegation of fraud as follows: "The Defendant [Emax Oil Company] has made willful, and intentionally fraudulent, and false misrepresentations...." *Croston*, 195 W.Va. at 90 n. 2, 464 S.E.2d at 732 n. 2. This Court reiterated the Rule 9(b) requirements of particularity and specified that the plaintiffs did "not, with particularity, point to the specific misrepresentations upon which they predicate their claim of fraud, and this Court's assessment of what the misrepresentations were is gleaned from the appellants' brief and other documents in the case, as well as from the complaint." *Id.* This Court further noted "that the allegations of fraud in the complaint are general and fail to meet the requirements of Rule 9(b)...." *Id.* at 91, 464 S.E.2d at 733. Syllabus point four of *Croston* explains:

> The failure to plead particularly the circumstances constituting fraud not only inhibits full review of the substance of the claim of fraud by this Court on appeal from the grant of summary judgment; such failure also precludes the introduction of evidence supportive of any general allegation of fraud contained in the complaint had the case gone to trial, unless permitted by Rule 15(b), R.Civ.P. Rule 9(b), West Virginia Rules of Civil Procedure.

*Id.* at 87, 464 S.E.2d at 729.

While this Court has enforced the principles of Rule 9(b) and has rendered opinions based upon inadequacy of pleadings pursuant

---

**1.** This opinion in no way concludes that the defendant in the instant case lied or stole; that is

an issue which will require determination below.

to Rule 9(b), it has not delineated any precise definition of the specificity with which the allegation of fraud must be made. Our prior forays, as outlined above, have been rather limited and have resulted in conclusions based upon total absence of an allegation of fraud in *Hager*, a determination that the respondents were clearly informed of the allegations against them in *Chamberlaine*, and absence of any factual basis for the assertion of "fraudulent misrepresentations" in *Croston*. Our history of dealing with implementation of Rule 9(b) has simply not provided any close cases, such as the present one, requiring more exhaustive evaluation. In the case sub judice, the plaintiff filed three separate complaints, none of which alleged fault with the particularity required by Rule 9(b). In the bill of particulars,[2] set forth in its entirety in the majority opinion, the plaintiff did allege additional facts upon which to predicate the fraud claim.[3] Thus, this case is readily distinguishable from *Croston* where absolutely no facts were pled. The question for our determination is how much is enough. At what point in recitation of the particulars of the allegation of the fraud claim is Rule 9(b) satisfied? Since our law on this subject is sparse, it is helpful to examine other jurisdictions.

## II. The Federal Approach

### A. Specificity

Applying Rule 9(b) of the Federal Rules of Civil Procedure, identical to the West Virginia version, in *Haroco, Inc. v. American National Bank & Trust Co.*, 747 F.2d 384 (7th Cir.1984), *aff'd per curiam*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985), the Seventh Circuit Court of Appeals emphasized

that a fraud pleading need not be as specific as a criminal bill of particulars and concluded that Rule 9(b) was satisfied where "the complaint adequately specified the transactions, the content of the allegedly false representations, and the identities of those involved." 747 F.2d at 404–05.

The Seventh Circuit has repeatedly instructed that Rule 9(b) requires the plaintiff to plead in detail the "who, what, when, where, and how" of the circumstances constituting the alleged fraud. *Cumis Ins. Soc'y, Inc. v. Peters*, 983 F.Supp. 787, 792–93 (N.D.Ill.1997); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990). As the Seventh Circuit noted in *DiLeo*, "[a]lthough states of mind may be pleaded generally, the 'circumstances' must be pleaded in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story." *Id.*

### B. Purposes of Rule 9(b) as Guidance

In evaluating the sufficiency of the pleading under Rule 9(b), a tribunal must be guided by the purposes of Rule 9(b). *Reshal Assocs., Inc. v. Long Grove Trading Co.*, 754 F.Supp. 1226, 1230 (N.D.Ill.1990) ("Rule 9(b) must not be applied blindly, but rather must be applied in view of its purposes...."); *Shields on Behalf of Sundstrand Corp. v. Erickson*, 710 F.Supp. 686, 689–90 (N.D.Ill. 1989). This Court has simply stated that the purpose is to permit the party charged with fraud the opportunity to prepare a defense. *Hager*, 161 W.Va. at 283, 241 S.E.2d at 923. Other jurisdictions have described the purpose as three-fold: "(1) protecting a defendant's reputation from harm; (2) minimizing

---

**2.** The utilization of a bill of particulars in a case of this nature is unusual, and by relying upon the recitation of factual allegations contained therein, we do not approve of this method of pleading one's allegations of fraud. However, as the majority points out, the lower court determined that the bill of particulars could be considered as part of plaintiff's pleading, and no assignment of error on appeal regarding such inclusion was made. Thus, we must base our determinations upon the allegations made in the three complaints, as well as the allegations forwarded in the bill of particulars.

**3.** The cumulative allegations, forwarded through the three complaints and the bill of particulars,

characterize the transactions as follows: the defendants, in applying for a permit to drill, provided false information regarding the ownership of the land to the State of West Virginia; the defendants drilled a well on the plaintiff's land; the defendants knew at the time of the drilling or soon thereafter that the well was located on the plaintiff's land; the defendants were aware that the well permit did not name the plaintiff as owner of the property; the plaintiff did not have notice of the drilling of the well; the defendants fraudulently failed to disclose and concealed notification of the existence of the well; and that the defendants failed to pay landowner royalties for at least ten years.

'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party." *Vicom, Inc. v. Harbridge Merchant Services, Inc.,* 20 F.3d 771, 777 (7th Cir. 1994). *Reshal Associates* also defined the purposes as three-fold:

> (1) to inform the defendants of the nature of the claimed wrong and enable them to formulate an effective response and defense; (2) to eliminate the filing of a conclusory complaint as a pretext for using discovery to uncover wrongs; and (3) to protect defendants from unfounded charges of fraud which may injure their reputations.

754 F.Supp. at 1230.

The Seventh Circuit has emphasized that Rule 9(b) does not require the plaintiff to plead facts which show that the representation was in fact false. *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 683 (7th Cir.1992). Similarly, in *Caliber Partners, Ltd. v. Affeld,* 583 F.Supp. 1308 (N.D.Ill. 1984), the Illinois court indicated that nothing in Rule 9(b) requires a plaintiff to plead evidentiary details that will later be used to prove the claim of fraud. 583 F.Supp. at 1311. In *Banowitz v. State Exchange Bank,* 600 F.Supp. 1466 (N.D.Ill.1985), the Illinois court emphasized that "[i]t is not necessary for plaintiffs to allege evidentiary details that will be used to support the claim of fraud at a later date." 600 F.Supp. at 1469. The Second Circuit Court of Appeals has also specified that Rule 9(b) does not require that the pleading contain "detailed evidentiary matter." *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 n. 20 (2d Cir.1979), cert. denied, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). The pleading of fraud must merely satisfy the goals of Rule 9(b), expressed by the Second Circuit as follows: (1) to provide a defendant with fair notice of a plaintiff's claim, to facilitate preparation of a defense; (2) to protect a defendant from harm to his or her reputation or goodwill; and (3) to protect a defendant from a groundless suit instituted in the hope of forcing settlement as a means of avoiding discovery costs. *See O'Brien v. National Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991); *Bender*

*v. Rocky Mountain Drilling Assocs.,* 648 F.Supp. 330, 336 (D.D.C.1986).

Federal jurisdictions have also embraced the concept of harmonizing Rule 9(b) with Rule 8 of the Federal Rules of Civil Procedure mandating that a pleading need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Reading those rules in pari materia, Rule 9(b) identifies those claims, such as fraud, for which only "slightly more" detail is required. *Tomera v. Galt,* 511 F.2d 504, 508 (7th Cir.1975).

### III. Conclusions

Pleading the fraud claim must be distinguished from proving the fraud claim; the pleading must not be expected to include every element of the proof. The proof, according to established West Virginia law, must include the elements of the action for fraud, including (1) that the act claimed to be fraudulent was the act of the defendant or induced by him, (2) that it was material and false; that the plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it. Syl.Pt. 3, *Cordial v. Ernst & Young,* 199 W.Va. 119, 483 S.E.2d 248 (1996). The pleading, however, is only held to the standard of Rule 9(b) and the accompanying case law. As indicated above, Rule 9(b) has been interpreted to require only the pleading with particularity, rather than an exhaustive narration of every facet of proof which will later be adduced in the action for fraud.

The allegations in the instant case clearly meet the requirements of the rule. The "act" claimed to be fraudulent in this case was the concealment of the fact that the well had been drilled upon the plaintiff's property. The plaintiff alleges that the defendants obtained a permit under false pretenses and thereafter fraudulently concealed and failed to inform the plaintiff of the existence of the well. Second, the plaintiffs alleged that the act was material and false; reliance to the plaintiff's detriment is indicated by the plaintiff's failure to act upon its right of collection for the ten-year period in which the concealment continued.

## IV. Detrimental Reliance

The dissenter relies heavily on the contention that the element of detrimental reliance was not pled with particularity, and indeed that the fact that the plaintiff did not know of the alleged deception (and thus obviously could not take affirmative action) renders the element of detrimental reliance as necessarily absent. The law relating to fraud makes clear that the concept of detrimental reliance includes not only an action, but also an inaction. Where a claim is based upon fraudulent concealment or fraudulent nondisclosure, it is the concealment of material facts inducing nonaction that constitutes fraud. "Fraudulent concealment involves concealment of facts by one with knowledge, or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud." *Silva v. Stevens,* 156 Vt. 94, 589 A.2d 852, 857 (1991), citing *White v. Pepin,* 151 Vt. 413, 561 A.2d 94, 96 (1989). As expressed in the Restatement of the Law, Torts 2d 118, Section 550, a party to a transaction is liable to the other for fraudulent concealment if he "by concealment or other action intentionally prevents the other from acquiring material information." Obviously, one who is defrauded in this manner cannot possibly take any affirmative action to indicate reliance, since he knows nothing of the deception. Yet, it would be ludicrous to reward a fraudulent actor for his skill in perpetrating such a deception. That is not what the law on fraud, and specifically on the element of detrimental reliance, envisions.

In *Reeves v. Keesler,* 921 S.W.2d 16 (Mo. App.1996), the Missouri Court of Appeals acknowledged that "silence or nondisclosure of a material fact can be an act of fraud if there exists duty to disclose." 921 S.W.2d at 20. In a circumstance in which a person has a duty to speak, his failure to disclose material information is equivalent to a fraudulent concealment. *Salisbury v. Chapman Realty,* 124 Ill.App.3d 1057, 80 Ill.Dec. 336, 341, 465 N.E.2d 127, 132 (1984). This concept was also concisely expressed in *Jim Walter Homes, Inc. v. Waldrop,* 448 So.2d 301 (Ala. 1983), as follows: "The law states that in order for silence to be an actionable fraud, facts must be averred which give rise to a

duty to speak." 448 So.2d at 306, citing *Hall Motor Co. v. Furman,* 285 Ala. 499, 234 So.2d 37 (1970); *Williams v. Bedenbaugh,* 215 Ala. 200, 110 So. 286 (1926). The Alabama courts have explained that "[t]he legal duty to communicate depends upon the existence of a fiduciary relationship, or relation of trust and confidence between the parties, the value of a particular fact, the relative knowledge or inequality of condition of the parties, or other attendant circumstances." *Id.,* 448 So.2d at 306, citing *Marshall v. Crocker,* 387 So.2d 176 (Ala.1980).

Confronting a challenge to a complaint on the ground that an allegation of concealment of fact did not constitute a misrepresentation, within its meaning as an element of fraud, the Court of Appeals of Oregon explained that "affirmative statements need not be made in order to be liable for fraud. Silence or concealment of facts can be the basis for a fraud action.... Non-disclosure of a known fact that is material to the transaction is actionable fraud." *Whitlatch v. Bertagnolli,* 45 Or.App. 985, 609 P.2d 902, 905 (1980), citing *Musgrave v. Lucas.,* 193 Or. 401, 238 P.2d 780 (App.1951), and *Millikin v. Green,* 283 Or. 283, 583 P.2d 548 (App.1978).

Although the pleadings in the present case were ineptly crafted, I agree with the majority that the requirements of Rule 9(b) were satisfied by the allegation of the facts substantiating the claim of fraud with sufficient particularity. Because the appeal in this matter was based upon the procedural issue of compliance with Rule 9(b), the specific nature of the detrimental reliance in this case and the manner in which that element was pled were not fully briefed. In the appropriate case, however, this Court should more precisely delineate the requirements regarding this concept, in accordance with the restatement and other law herein summarized.

McCUSKEY, Justice, dissenting.

(Filed April 2, 1998)

In reaching its opinion, the majority of the Court has disregarded the requirements of Rule 9(b) of the West Virginia Rules of Civil Procedure regarding the pleading of fraud. This action adds credibility to the public perception that this Court does not follow its

own precedents and rules. Reversal of the well-reasoned and factually grounded decision of the trial court will also create reluctance by trial judges to perform their duty to weed out meritless litigation when the facts and the law clearly entitle a litigant to a pre-jury determination.

The facts which are essential to the issues are not in dispute: in 1980, the appellee and defendant below, Cardinal Resources, Inc., acting pursuant to the provisions of a proper oil and gas lease, drilled a producing well on property owned by the appellant and plaintiff below, Pocahontas Mining Company. Cardinal did not pay the royalties due to Pocahontas under the lease until early 1992 when the appellant, through its surveying crew, determined that Cardinal's well was located on Pocahontas' property, not on the property of an adjacent landowner as was shown on Cardinal's original well permit application. After the discovery that the well was actually located on the appellant's property, Cardinal began to pay the royalties to Pocahontas, leaving in dispute unpaid royalties of $32,842. In 1993, Pocahontas filed a complaint against Cardinal in the McDowell County Circuit Court seeking contract and tort damages, together with attorney's fees and punitive damages for alleged breach of contract, fraud, "theft," and trespass as a result of Cardinal's failure to pay the royalties due from the well under the lease.

Crucial to this case is the fact that Pocahontas did not allege any fact in its initial complaint, its second amended complaint, or in its subsequently filed "Bill of Particulars" which demonstrates that it relied, to its detriment, on the well drilling on its property by Cardinal or on Cardinal's failure to pay the royalties under the drilling lease when due.

The trial court, after twice giving Pocahontas the opportunity to amend its complaint to comply with the requirements of Rule 9(b) that fraud be pled with particularity, concluded that Pocahontas had failed to do so and granted the appellee's motion to dismiss the fraud claim. The court ruled that Pocahontas "does not allege fraud with the particularity required by Rule 9(b) and, as a matter of

law, does not present a proper factual basis upon which relief can be granted for fraud and does not comply with the requirements of this court's order of April 4, 1996." The case proceeded to trial on the remaining contract claim on September 23, 1996, at which time the trial court directed a judgment in favor of Pocahontas against the appellee for $32,842 in unpaid royalties and $12,783 for damages incidental to the breach of contract claim.[1]

Both Rule 9(b) of the Federal Rules of Civil Procedure and Rule 9(b) of the West Virginia Rules of Civil Procedure specifically require that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." As clear as the Rule is, clearer still is the reason for the rule. In *Hager v. Exxon Corporation*, 161 W.Va. 278, 241 S.E.2d 920 (1978), this Court concluded that "fraud is of such gravity" that the strict requirement of Rule 9(b) was included to afford the party charged with fraud an opportunity to prepare an adequate defense. In the same vein, 5 Wright and Miller, Federal Practice and Procedure: Civil 2d § 1296 (1990), advanced the following reasoning for requiring particularity in the pleading of fraud or mistake:

> It has been said that the requirement is necessary to safeguard potential defendants from lightly made claims charging commission of acts that involve some degree of moral turpitude. Allegations of fraud or mistake frequently are advanced only for their nuisance or settlement value and with little hope that they will be successful.

This is precisely the type of case that the rule requiring particularity in pleading fraud was designed to prevent.

The majority's error arises from its failure to apply the definition of fraud under West Virginia law to the appellant's factual allegations. The elements of fraud under West Virginia case law, which tracks the classic textbook definition of fraud found in 5 Wright and Miller, Federal Practice and Procedure: Civil 2d § 1297 (1990), are stated in

---

1. Cardinal offered to pay $71,000 to Pocahontas by an Offer of Judgment at an early stage of the proceeding, but Pocahontas refused the offer and elected to proceed to trial.

Syllabus Point 3 of *Cordial v. Ernst & Young,* 199 W.Va. 119, 483 S.E.2d 248 (1996):

> " ' "The essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it." Syl. Pt. 1, *Lengyel v. Lint,* 167 W.Va. 272, 280 S.E.2d 66 (1981).' Syllabus Point 2, *Muzelak v. King Chevrolet, Inc.,* 179 W.Va. 340, 368 S.E.2d 710 (1988)." Syllabus point 2, *Bowling v. Ansted Chrysler–Plymouth–Dodge,* 188 W.Va. 468, 425 ·S.E.2d 144 (1992).

The majority opinion ignores this Court's precedents regarding fraud, which were reaffirmed as recently as 1995 in *Croston v. Emax Oil Co.,* 195 W.Va. 86, 464 S.E.2d 728 (1995). In upholding the trial court's grant of summary judgment for the defendant in a similar oil and gas lease case alleging fraud, the unanimous Court said:

> It is noted that the allegations of fraud in the complaint are general and fail to meet the requirements of Rule 9(b) of the West Virginia Rules of Civil Procedure.... The failure to plead particularly the circumstances constituting fraud ... inhibits full review of the substance of the claim of fraud by this Court on appeal from the grant of summary judgment....

195 W.Va. at 91, 464 S.E.2d at 733.

To plead fraud properly, West Virginia law requires more than the mere allegation of a misrepresentation contained in the appellant's complaints and Bill of Particulars. Although Pocahontas alleged a false representation by Cardinal (claiming to drill a well on adjoining property but knowing that the well was actually located on the appellant's property), none of the appellant's pleadings meet the requirements of the second element of fraud, which necessitates *reliance* by the plaintiff, to its detriment, on the alleged fraudulent act of the defendant.[2]

Thus, an essential element necessary to the proper pleading of fraud is absent from any and all of the appellant's pleadings. The circuit court gave the appellant every opportunity to comport with the rules for pleading fraud, but the appellant was unable to comply, apparently because there were no facts which could arguably constitute an act of detrimental reliance by Pocahontas on Cardinal's failure to provide proper notice of the drilling of the well or on Cardinal's failure to promptly pay royalties. In other words, Pocahontas did nothing differently, and lost no economic opportunities, simply because Cardinal drilled a well on Pocahontas' property under the incorrect assertion that the well was located on adjacent property.

The appellant's intemperate use of˙ highly charged rhetoric ("theft" and "stealing the gas") beguiled the majority of this Court to a conclusion that this dispute is something more than what the trial court recognized as a simple contract claim. Rather than encouraging prompt resolution of a relatively minor dispute between two business entities, the Court has created another stereotypical West Virginia tort litigation bonanza.

This Court, in *Chamberlaine & Flowers v. Smith Contracting,* 176 W.Va. 39, 341 S.E.2d 414 (1986), lucidly defined the difference between a contract claim and a tort claim:

> The key distinction is whether the act complained of was one of misfeasance or nonfeasance. Misfeasance, or negligent affirmative conduct, in performing a contract generally subjects the actor to tort liability in addition to contract liability for physical harm to persons and tangible things. On the other hand, there is generally no tort liability for failing to do what one has contracted to do, unless there is some duty to act apart from the contract.

176 W.Va. at 42, 341 S.E.2d at 417 (citations omitted).

The proper characterization of Cardinal's action in drilling a well on the appellant's property, pursuant to a proper lease, but failing to pay royalties due under the lease, is a contract claim, whether the failure to pay royalties was intentional or a mere mistake.

---

**2.** The appellant's last and most detailed pleading (entitled "Bill of Particulars"), stating the facts that allegedly constitute fraud, is set forth verbatim in footnote 3 of the majority opinion.

At most, Cardinal failed to do what it had contracted to do, namely pay royalties due to Pocahontas.

The error in the majority's reasoning warrants more than a simple dissent because of the far reaching result that can be foreseen from this anonymous *per curiam* opinion. If the appellant is allowed this "second bite of the apple" with a new trial, this time on a fraud count, it will undoubtedly seek, in addition to the breach of contract damages already received, attorney's fees, pursuant to *Bowling v. Ansted*, 188 W.Va. 468, 425 S.E.2d 144 (1992), annoyance and inconvenience damages, other subjective, tort-type damages, and, of course, unquantifiable and unlimited punitive damages as a result of this Court's ruling in *TXO Production v. Alliance Resources Corp.*, 187 W.Va. 457, 419 S.E.2d 870 (1992). There is irony lurking in the fact that the former justice of this Court who served as the midwife to the goose that laid the golden *TXO* egg now appears before the Court as a member of the Bar seeking an opportunity to seize that same golden egg for his client, the appellant. Chances are good that the hatchling from this egg will be either "really stupid" or "really mean." [3]

MAYNARD, J., has authorized me to state that he concurs with this dissent and that he wishes to join herein.

---

**3.** Justice Neely penned this categorization of the basis for assessing punitive damages 500 times greater than actual damages in the *TXO* case, *supra.*